First case this morning, 206-1071, people in the city of Illinois, this is Brent Marker. On behalf of the Ethelon, Ethelon, Mr. Larry Wechter, on behalf of the Ethelene, Ms. Vida, and the Ethelon. Ethelene. There's the problem. Okay, thank you. I feel a contempt coming out, but we'll proceed. Thank you. My name is Rita Myrtle, and I'm here for the state. This is a state appeal from a trial judge's suppression. And what happens in this case is you have to decide whether probable cause existed for the officer to arrest the defendant for driving under the influence. The probable cause test is did the officer know facts that would lead a reasonable person to believe that probable cause existed. In this particular case, the officer pulled the defendant, the car the defendant was driving over because of an equipment violation. The car pulled into a gas station lot. When the officer approached the car, the driver of the vehicle, the defendant, didn't roll the window all the way down. He only rolled it down a little bit, which clicked in the officer's head that that might have been because the officer thought that he was hiding something like the smell of alcohol. Is there a dispute about that it was below zero? There's no dispute as to how cold it is now. It's February 21st at 2 52 a.m. in the morning, and I didn't go online to see what that temperature was. There's testimony from the defendant that is very cold below zero. So there's no dispute as to that. When the officer speaks to the defendant, the defendant's speech is slurred. This, people argue, is an indication defendant is intoxicated. When he looks at the defendant, the defendant's eyes are bloodshot and clay and glassy. This is also an indication defendant is intoxicated. Now, let me interrupt you. I remember the judge making a comment about the bloodshot eyes and thinking it was 2 52 in the morning. Well, and also cold. He brought in the fact that I don't know that he said cold, but I guess my question is that the officer's observation, the bloodshot eyes is in the car immediately. As he approaches the car, he notices that the eyes are bloodshot and glassy. He gets the defendant out, and the defendant fails all of the sobriety tests, the field sobriety test. He fails the HGN test. He fails the walk and turn test. He fails the one-legged stand test. He tells the police officer he says that he has problems with one foot, that he has no middle foot. I believe is what he says. He said the middle of his foot doesn't touch the ground, right? But the officer testifies that he asked the defendant if that would affect his ability to perform the test, and the defendant told him that would not. Where are we at in relation to the HGN testimony right now? I believe that HGN testimony is still admissible as an indication of alcohol, of probable cause. Of alcohol use or alcohol intoxication? I'm not sure, so I'm not going to answer that because I can't tell you for sure. If you want me to, I'll look and file a motion to supplement. Okay, the judge conceded that the stop was okay when he was making his rulings, but he was bothered by the fact that bloodshot eyes, because he said it's 2.52 in the morning and a lot of people would have bloodshot eyes then, but he neglected to think about the fact that a lot of people who are drunk are out at 2.52 in the morning. He also said that the defendant slurred speech, the judge, that the officer shouldn't have really relied upon that because the defendant had slurred speech when he testified. How he thought the officer would have known when he first met the man on a stop that the guy has a slurred speech, I don't know, because we're supposed to be looking at whether or not a reasonable man would think that the person was intoxicated. I think if you meet someone at 2.52 a.m., their eyes are bloodshot, glassy, and their speech is slurred, and they can't perform any of the field sobriety tests, a reasonable person would be led to believe that they were under the influence of alcohol or intoxication. Add to that that he asked the defendant if he'd had anything to drink, and the defendant said that he'd had a Kahlua and cream, and if you watch the videotape, he asks the defendant how long ago that was, and the defendant says two hours. So all of that taken together, I believe, would give the probable cause. What seemed to bother the trial judge was the defendant took a breathalyzer after this happened and blew a .00. The defendant also was given a test to determine the presence of drugs, and cocaine was present. The trial judge admitted both statements, but said he wasn't going to use the fact that cocaine was present in the defendant's statement for anything because that test was administered after the defendant had been arrested. Well, so had the breathalyzer test been administered after the defendant had been arrested, but he used that breathalyzer test to say that the officer's testimony was not credible because the officer said he smelled a strong odor of alcohol in the car. The judge didn't consider... In the car? In the car. In the car, coming from the car. He didn't consider the fact that there was another person in the car with the defendant who may have been drinking or that alcohol may have been spilled in the car. Yes, the officer, if you watch the videotape, the officer talks about on the videotape the strong odor of alcohol. That's on the videotape. You're getting to the testimony issue, too. Right. So the officer's saying he smells alcohol not on the defendant, but from the car. I believe it's in the car. On the videotape. I believe it's in the car on the videotape, yes. Okay. And I believe that if you're going to consider the fact that you got a .00 as showing that he's a liar, you should consider the fact that he had cocaine in his system to corroborate the fact that his eyes were glassy, that his speech was slurred, and that his eyes were bloodshot, and he couldn't perform the test. There's an evenness there. One, you consider the other, but should he consider even? I don't believe he probably should consider either, but if you're going to consider one, you need to consider it for the other. I'm not sure that follows, but go ahead. That's my argument. If you have any questions, I'd be happy to answer them if I can. Well, what about the issue of the ‑‑ I thought there was a clear ‑‑ I guess a clear mistake that the judge made. I thought you argued that the judge made a clear mistake that the officer testified to a strong odor of alcohol from the defendant's breath. He did, and he didn't testify to that.  I hear it from the other side, but I thought there was no dispute as to the judge was wrong in describing the testimony of the officer, and apparently the judge may have ‑‑ I mean, a good faith mistake may have been confusing the testimony with the statements on the video. He may have, and that's why I put in the second paragraph of that argument that on the videotape the officer did say something about the strong smell of alcohol. Mary? No, nothing. Thank you. Thank you. Counsel for the defendant, Mr. Rucker. Good morning. May it please the courts, my name is Larry Wetter for Mr. Marker. With all due respect to Ms. Myrtle, I think she has skipped over the crucial question in this case, which is on appeal are the court's factual findings and inferences against the manifest weight of the evidence? And it seems to me that in this case the issue on appeal hinges on the credibility determination that Judge Wilson made with respect to the testimony of the arresting officer. Wasn't Judge Wilson ‑‑ doesn't it appear to you that Judge Wilson was trying the DUI case as opposed to looking for probable cause or determining whether or not there was probable cause? I didn't get that impression at all. I'm not sure why. There's certainly a difference between a motion to suppress hearing and a trial, correct? Sure. And is it Judge Wilson's job at the probable cause hearing to determine whether or not the officer's observations were incorrect? Absolutely. It's his prerogative as the finder of fact to make determinations as to what the facts are, as to what inferences should be drawn from those facts. So the inference that when you stop a car and they open the window this much, there's an odor of alcohol, there's bloodshot glassy eyes, there's slurred speech, you think the police officer's observations should be contradicted by the judge for a probable cause hearing? Well, I think what the judge does is he listens to the testimony. I think there were three witnesses. And there's a videotape. I don't know if you've had the opportunity to look at that yet, but there's a videotape, and he looks at that, and he listens to all the testimony, and he makes a judgment. He says, well, based on what Mr. Marker told me, based on the officer's testimony, based on what I see on this videotape, I just have a problem with the officer's conclusion that this person was under the influence of alcohol. And it seems to me that the factors that I see here, for example, his performance on the field test, the officer's uncertainty about a variety of things, all of these factors say to me, the trial judge, that his inferences or his conclusions were not appropriate, and it seems to me that Mr. Marker was not under the influence. That's a determination uniquely within the function of the trial judge, even in a motion to suppress. And Ornelas, you know, the U.S. Supreme Court case that sets the mixed standard in these situations clearly says that. Well, you just make a point there, sir, that it's reasonable to conclude that he was not under the influence, and I think that's what my colleague's getting at. That's the issue for trial. We don't determine now whether he was under the influence, whether the officer had probable cause to believe it. At the trial, we determine whether he was under the influence. There's no dispute here that he wasn't under the influence of alcohol, which leads to the question I asked your opponent there. She's saying, well, the judge considered the breathalyzer, the 0.0. Is it appropriate for the judge to consider that? And if so, is it also appropriate, as she said, to consider the positive test for, I guess it was cocaine? Are those things the judge is supposed to take into consideration at this stage of the proceedings? Well, as to the question of whether Mr. Marker was under the influence of alcohol, the officer testifies that in his opinion, at the scene of the stop, that Mr. Marker was under the influence. And so it's the trial judge's response to that testimony, the hearing judge's response to that testimony, indicating that he doesn't believe that that was the appropriate inference or the appropriate conclusion to draw from the evidence. But isn't it the police officer's job to look at the totality of the circumstances and determine whether or not there's probable cause to arrest him for driving under the influence of alcohol? That's why you give the blood alcohol test, the breathalyzer, after you have the probable cause, isn't it? Well, at the scene, of course, the officer has to make a judgment. Correct. But in the trial court, the judge has to make a determination as to whether those inferences and conclusions that the officer drew at the scene were correct. The police officer or the judge at the trial court level at the motion expressed has to make a determination as to whether or not the totality of the circumstances were such that the police officer had probable cause to determine whether or not he had the right to arrest him for DUI, correct? Correct. So the judge, it sounds at some points in this record, the judge is substituting his judgment for that of the police officer that was there on that evening, doesn't it? Yes. But I don't see why that's inappropriate. I see. I mean, he's presumably the neutral detached magistrate, and that's why we have the Fourth Amendment, because we have the police officer who's engaged in the difficult task of ferreting out crime and arresting people who might be guilty, and we have the defendant who has an interest in his liberty, and we have to have someone who sits in the middle and says, well, I think this was appropriate or not. I go back to my earlier question, though, counsel. Is it appropriate for the judge to use the breathalyzer results that come afterwards to determine whether or not there was probable cause based on this other stuff? Is it proper? He did say, I can't believe an order of alcohol when there's a breathalyzer with that zero number. Is it appropriate for the judge to do that when he's weighing this? Yeah, I think it was appropriate for him to do that because, again, it wasn't introduced to show specifically that this person was or was not under the influence of alcohol, as would be appropriate at the trial. It was introduced for the purpose of saying, of impeaching the officer who said, in my opinion, this person was under the influence because he smelled of alcohol, et cetera, et cetera. And then the defense, I think without objection, puts this testimony in to say, well, you know, this is why, Your Honor, this is why you should question the officer's conclusion. How can you draw that conclusion? What about the point, though, that he should also consider the positive results of the cocaine? Because that was not introduced to question anyone's credibility. And if I recall correctly, the state was trying to introduce that evidence inappropriately to try to show guilt or try to show retroactively that the officer had probable cause. They were really used for two different purposes. They were trying to put it in to say, I mean, the state knew about the zero breathalyzer, so the state was trying to say, look, you have these symptoms that could be attributable to alcohol. We concede they're not, but they could be attributable to drugs, and we assert that they are. I don't know that they conceded that he wasn't under the influence, so I think it was part of their argument. Under the influence of alcohol? Yeah. Okay. I agree with the trial judge. It's going to be hard for them to sustain that. My next question is we've got some new law from the Supreme Court about what we do here at the appellate level when we've got these videotapes. Now, the tradition was, as you pointed out, a manifest wait, but if we've got a videotape that we see just as well as the judge sees, there's one case the Supreme Court says we just did do it de novo. Now, here I think we've got a combination of testimony and videotapes, so do we take it and segment it, or do we look at the videotape without any deference to the trial judge's conclusion of what the videotape shows and defer to the trial judge's conclusions on the other evidence that came in, like credibility? And while you're answering that, weave into it whether or not you agree or disagree that the trial judge made a clear error when he said the officer testified that there was a strong order of alcohol. Can I take the last one first? Sure. What do you want? Yeah, I think the question of strong versus not strong has much to do about nothing. It was kind of interesting for me when I reviewed the case again to see that in the state's motion for reconsideration of this ruling, they put in their motion that the officer testified to the strong order of alcohol. So, you know, I mean, they made the same not-too-important mistake in characterizing what he said in the testimony. I thought the characterization wasn't whether the officer used the word strong or not. I didn't think there was a dispute on that. The question was did he testify to that in court, or was he talking on the videotape as opposed to testimony? Well, in the brief, what they say is he made this horrendous mistake. The trial judge made this horrendous mistake because he said the officer testified to the, quote, strong order of alcohol. What did the judge say? What was the ruling that the judge made or the statement that the judge made about that strong order of alcohol? He said that he thought the testimony was inconsistent with the .0 BAC result. But there was no such testimony. Well, there was testimony about the odor of alcohol. There was testimony about the odor of alcohol. Testimony? I think I'm pretty sure that he says he, yes, he smells the odor of alcohol when he approaches the vehicle initially at the beginning of the stop. And that's in testimony, not on the videotape. Right, right. That's in his testimony in court. And what I'm not sure of, Your Honor, is whether he mentioned. . . There was another point in the testimony. I thought he may have mentioned it again. But in any event, he mentions it from when he approaches the vehicle. He mentions it again, saying something to the defendant. I want to clarify. He's mentioning. I want to know whether he's mentioning on the videotape or whether he's mentioning in his trial testimony, his probable cause hearing testimony. That's a big distinction. Well, in his testimony, I'm 98% sure he says that he smells the odor when he first approaches the vehicle and he starts talking to the defendant. On the tape, there's a couple of comments that he makes, including, I'm not sure, sir, whether you're tired, whether you look this way because you're tired or you're under the influence. Okay, the question on the other part of my question. Right. What do we do here? We've got a videotape we can see as well as the judge. Do we sort of bifurcate our findings here and say part of the factual findings we reviewed de novo, those based on the videotape, because we can see it as clearly as the judge and the other. And we do it. And this is really an open-ended question, because this is new rule. Well, as you mentioned earlier, there's testimony. And so since there's no videotape of the testimony, I don't think we ever get to the point where we can say this is de novo. No, and the testimony is still manifestly. But what about the part of the evidence that we can see as well as the trial judge, meaning the videotape? Right. I think that may depend in any given case on how good the video is, how much you can see. But you're suggesting that it will, but my question was that we can see it as well as the trial judge can. Right. And what I'm saying is in much of the video, you can see it just as well as the trial judge. But that's not true of the whole thing. For example, you can't smell what he smelled up at the window of the truck. There are portions of the video where he walks, where the defendant walks outside the frame momentarily and then comes back. Parts of it where you can't see. No, but that's my question. Do we take the video part that we can see the same and review that de novo? Oh, you mean just those portions of it? Yeah, I'm asking do we bifurcate these evidentiary rulings we make? Some of them are made de novo and some are made deferential. That's my question. Yeah, I don't think so. I think, again, the question is was the trial judge entitled to say, based on that and other things, you know, the video and other things that you can see, to make a determination as to whether the arresting officer drew the correct inferences and conclusions? That's really the standard on review. Well, I think the standard on review is a little confused to me now. But let me move to another quick point. The judge seemed to rely on the fact that the slurred speech that the officer described, and maybe or maybe not as clear from the videotape, the judge compared and said the man had slurred speech in court. And the judge, as I read it, seems to think that that cuts in favor of the defendant. And I'm a little lost on that. It would seem to me that slurred speech, and counsel made this point, would cut in favor of the state at that point. But with all due respect, Your Honor, that's not what the trial judge says. He doesn't say the defendant's speech was slurred as I listened to him in the courtroom. He said the defendant's speech pattern was the same as I heard it on the videotape. In other words, and if you listen on the videotape. Well, did he say the opposite? I've heard it on the videotape, and I've heard it in court, and it's not slurred? He doesn't say slurred either way. He just says the speech, the defendant's speech as I heard it in the courtroom, sounds the same as it does on the video. Then when you listen to the video, I don't know if you've had the opportunity to do that, when you listen to the video, you can hear the defendant, you can hear him speaking clearly and responsibly to the police officer. He has, I don't know if this is the right analogy to make, but he has what I would call a Louis Armstrong voice. He has a very deep, gravelly manner of his speech, but you can understand everything he's saying. He's not tripping over his tongue. He's not slurring his words. So what Judge Wilson was saying was I could hear him just as well in the courtroom as I hear him on the videotape. If you listen to the video, it's fine. There is no slurred speech. But you just took that a step further. You said the speech on the video is fine when the judge is out. Right. The ears, I guess, would be more appropriate. Okay. Right, right, because anyone, like you say, anyone can listen to the video and you can hear, you know, it's real, like this, but it's not a problem enunciating. I should say it that way. There's no problem enunciating his words at all. Go ahead. There are two points where the trial court specifically references the officer's credibility. One is as to the order of malpractice. The second one is as to the one-leg stand test where the trial court finds that the officer's not credible because he felt, he in the trial judge felt that the defendant passed the one-leg stand test. And the reason the court did it was because the court said, I can never do that test. You know, again, we're talking about probable cause. I mean, on the video tape, it appears, you know, to at least at first glance that Mr. Marker failed that test very miserably. The one-leg stand? The one-leg stand, not the one-leg stand. He put his foot down four times and really couldn't keep it up past three counts. So what is your take on the trial court saying, you know, in a probable cause determination, that I don't believe the officer when he says that the defendant failed that test? Well, it appears on the video tape that he failed the test. Well, first of all, I would say that I think the judge's comments were more general with respect to Mr. Marker's performance on the field test. I think he mentions in general, he says, I've seen thousands of these things in my time. He did okay. He passed the various tests. He, on the walk and turn, he, you could see him on the video. He's walking correctly, he's turning correctly, he's pivoting correctly. And so it was a more general comment that with respect to everything, he thought the defendant did all right and that the conclusion that was drawn was not the appropriate one. Now, yes, his performance is not perfect. And there's a reference, for example, to him standing near the squad car as he does one of these, one or two of these tests. And my recollection is you look at this video and you see him in profile as he's either standing or moving. And what he does is something like this, where the back of his hand momentarily strikes the front of the squad car. And what he does not do is this, where he leans on it for his balance. So I think the trial judge was saying, I looked at the totality of all of this, the driving, the performance, et cetera. It seemed to me that this person was not under the influence of alcohol and that all of the factors that the officer. But is it his job at that point to determine whether or not he's under the influence of alcohol? But if you say that, Your Honor. Is it the police officer, the judge's job at that point to make himself an expert by saying I've observed thousands of these cases and I don't believe he's under the influence of alcohol, I don't believe he failed a test, I don't believe he's under the influence of alcohol. Isn't that the question here? Did the judge go one step beyond? Just as the first question I asked when you got up here. Was the judge hearing a trial or was the judge hearing a motion for summary judgment or a motion to suppress? Well, certainly he can rely on his experience as a trial judge, as a finder of fact. And I guess the ultimate problem I have with your question is that if the judge's role is as narrow as I think you're positing, that means that he has to accept the police officer's conclusion. And I don't think that's consistent with the case law. You know, if you say that, then the police officer becomes the judge. Was the judge, I think I asked this before, do you agree or not that the judge was wrong or confused, and not in a, I think in an understandable way, about whether the officer testified that he smelled a strong odor of alcohol coming from the defendant? I think the word strong may have gotten in there by mistake. But the judge, but the officer did not testify that he smelled alcohol, strong or not, coming from the defendant. He didn't testify to that. Again, it's my recollection that on the tape, I'm sorry, that in reference to what's on the tape, the officer testifies that he smelled alcohol when he approached the vehicle. I'm not 100 percent positive on that, but I think there was testimony that he smelled alcohol. If it wasn't for a minute that the officer intentionally lied to the defendant and told him, I smell strong alcohol on your breath, some people would find that distasteful, but that's perfectly permissible under the law for the officer to actually lie to the defendant. It's a big difference if he lies to the trial court. Yeah, in certain contexts, I think that's not illegal, yeah. Yeah, okay. Right. Mary, anything else?  Do you want to say in closing, sir? Other than you want us to affirm? I just think that similar to cases where the result is adverse to the defendant in the trial court and he has the mountain to climb to show that it was against the manifest way to the evidence, the state has that same mountain to climb here and they haven't climbed it. We're aware of that point, and that's a good point to close on nonetheless. Counsel for the state. I would just respond to your question about whether the officer testified there was a strong smell of alcohol. I believe the only time that came up during the officer's testimony was at page record 25 when he was asked by the state, based on your initial observations, did you ask him, including the smell of alcohol, did you ask him if he had been drinking? The officer said, yes, I did. Did he admit that he had been drinking? The officer testified, yes, he did. The question, what did he say he had been drinking or how long? Answer, I believe he told me he had a Kahlua and cream approximately two and a half hours prior to me making contact with him. And I believe that was the officer's testimony regarding alcohol. He never testified that he smelled the strong alcohol when he approached the vehicle. Well, that doesn't matter unless you get to the next page. What does the trial judge say about the officer's testimony? The trial judge said he basically lied because he testified there was a strong odor of alcohol. But I believe he was referring to what was said on the videotape rather than the officer's testimony. Doesn't at page 40, doesn't the trial judge basically concede that the smell of alcohol may have been present? He does say that at one point, yes. Because the defendant had admitted, and on the videotape you hear him, he admits a couple hours earlier he had a Kahlua and cream. All right. Counsel closed with a good point there that, you know, the situation is a little reversed here from the norm. You've got the mountain to climb here. I understand that. And the standard of review of my question to the counsel was, what are we doing with this new Supreme Court case saying that we look at things that we can see as well as a trial court, not deferentially but de novo? Should we in this case bifurcate that? Yes, I think you're required to bifurcate it. That's my reading of that case. All right. Because it acts against me a lot of times, but I think you're required to bifurcate it. So also we would look at the videotape de novo, we would look at the evaluation of the testimony deferentially, and on that point you're saying the testimony, the judge was confused as to what the testimony was? Yes. Did the state concede to the or not object to the .00 coming in when it first came in? The state did not object to that. So that came in. That was in the record. That came in. That's a little different than the cocaine situation, which was clearly objected to at the time. And the objection was overruled. That's in the record too. Okay. It was overruled, so the judge said the cocaine test, okay. Right. Let it all come in. It all had come in, but the judge limited what use he would make of the cocaine. Right. Mary? Anything you want to say in closing other than reverse? No. Thank you. All right. Thank you both for your arguments in case we take out your advisement. The decision will issue in due course. Thank you.